# Durham v. Commonwealth.

(Decided September 30, 1930.)

B. S. GRANNIS for appellant.

J. W. CAMMACK, Attorney General, and HOWARD BLACK for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellant, Ernie Durham, was convicted in the Mason circuit court of the offense of willfully and maliciously shooting at Cal Houghaboo, without wounding him, an offense denounced by section 1166 of our present Statutes, and by the verdict there was imposed upon him the maximum punishment provided therefor of five years' confinement in the penitentiary. On this appeal his counsel relies upon one ground only for a reversal, and which is that the court should have sustained defendant's motion for a directed verdict of acquittal because the evidence was insufficient to sustain the charge. The defendant did not testify in the case, nor introduce any evidence in his behalf, but relied for his acquittal solely on the insufficiency of the testimony offered by the commonwealth. The only witness who testified to the alleged shooting was the supposed victim, Cal Houghaboo; and the substance thereof was: That on the night when the alleged shooting occurred and at about 12 o'clock witness awoke and heard some noises about a truck he had left at the side of the road in front of his house and located about 150 or 200 feet therefrom, which indicated to him that some one was stealing gasoline from the tank of the truck. The night was dark and extremely foggy, so that witness was unable to see exceeding a distance of ten feet in front of him. He procured a pistol and fired two

shots intending to frighten away the supposed thief, and they were answered by two shots from some one at or near the truck; but who it was that fired those two shots or in what direction they were fired witness not only did not know, but he expressly so stated.

On the issue as to the conditions at the time of the shooting, we insert this from the narrative testimony of that witness as found in the record: ''That it was very dark and very foggy. That he could not see ten feet ahead of him. That when he heard the two shots from down below the truck, he heard no sound of any bullets near him; that he saw no flash of the gun, and could not say whether the other man shot in the air, in his direction or away from him, or whether the shots were fired north, east, west or south; that he could not and would not say that the shots were fired at him, or even in his direction.'' Witness stated, however, that after firing of the two shots by the supposed criminal he heard an automobile start down the road, and he later procured others, and they with him followed it to a point where the road was obstructed by repair work, and they there found defendant, hatless, and asleep in an automobile, and that he had a pistol with two empty shells in it, a straw hat having been found near the truck of the prosecuting witness soon after the shooting and before defendant was so located.

It will therefore be seen that the evidence was abundantly sufficient to establish the fact that the shooting near the truck was done by defendant. He, however, is not being prosecuted in this case for shooting upon a highway. On the contrary, his offense consists, not in shooting in a place forbidden by the law, but in willfully and maliciously shooting *at* another. The evidence in the case wholly failed to show that defendant shot at the prosecuting witness or at any other person or any object. On the contrary, so far as the witness knew the shots that he heard near his truck may have been fired into the ground, up toward the sky, in an opposite direction from him, or in any other direction than *at* him. No fact remotely indicating, or from which it might be inferred, that such shots were directed toward the prosecuting witness appears in the case. On the contrary, the witness stated that he neither saw the flash of the light from the pistol when those shots were fired, nor did he hear passing by him the noise of any bullets.

One of the definitions given by Mr. Webster of the word "at," and the one embodying the sense of that word as used in the statute, is: "An object or end directed towards; as, to look at it; to aim at a mark," etc. In other words, the act done must be aimed, pointed, or directed towards the thing forbidden by the statute, which in this case would require that the person who fired the shots at the truck of the prosecuting witness should have aimed or directed them toward the prosecuting witness, and without proof of the latter fact there was nothing from which the jury could legally infer that the crime denounced by the statute was committed. It is just as probable (as is argued by learned counsel for defendant) that although defendant was the one who fired the shots with which he is charged, yet he may have fired them in the air, in the ground, or in an opposite direction from the prosecuting witness, with the view, purpose and intention of preventing the latter from coming upon and apprehending him until he could make his escape, just as the prosecuting witness says that he aimed at no object or person when he fired his shots, but did so for their frightening effect. We therefore conclude that the evidence is wholly insufficient to sustain a conviction, and that if it is substantially the same on another trial a peremptory instruction should be given.

Wherefore, the judgment is reversed, with directions for proceedings consistent with this opinion.